**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HAZELANN N. APPLEWHITE<br><br>      Plaintiff,<br><br>V.<br><br>THE TOWNSHIP OF MILLBURN, THE MILLBURN TOWNSHIP POLICE DEPARTMENT, POLICE OFFICER BRYANT BAERGA, SHIELD NUMBER 518, POLICE CHIEF DAVID A. BARBER, TORY BURCH, LLC, TORY BURCH SHORT HILLS, JOHN AND JANE DOES, SHIELD #'S 1-5 UNKNOWN, INDIVIDUALLY, WHO WERE EACH INVOLVED IN THE INCIDENT RESULTING IN PLAINTIFF'S FALE ARREST, SEARCH SEIZURE, DETENTION AND/OR INJURIES<br><br>      Defendants. | CIVIL ACTION NO.: 11-6957(ES)<br><br>**Civil Action** |

---

**DEFENDANTS' BRIEF**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

**METHFESSEL & WERBEL, ESQS.**
3 Ethel Road, Suite 300
PO Box 3012
Edison, New Jersey 08818
(732) 248-4200
+1(732) 248-2355
mailbox@methwerb.com
Attorneys for Township of Millburn,
Township of Millburn Police Department,
Bryant Baerga, and David Barber
Our File No. 75432 ELH

**TABLE OF CONTENTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-viii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. .4

Legal Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    I.      APPLICATION OF FEDERAL RULE OF CIVIL PROCEDURE 56(C) REQUIRES DISMISSAL OF THE COMPLAINT . . . . . . . . . . . . . . . . 8

    II.     QUALIFIED IMMUNITY SHIELDS BARBER AND BAERGA FROM PLAINTIFF'S CIVIL RIGHTS CLAIMS. . . . . . . . . . . . . . . . . . . . . . .10

    III.    THE SECTION 1983 CLAIMS AGAINST CHIEF BARBER MUST BE DISMISSED FOR FAILURE TO SHOW EVIDENCE OF DELIBERATE INDIFFERENCE. . . . . . . . . . . . . . . . . . . . . . . . . . .. 13

    IV.    THE SECTION 1983 CLAIM FOR DELIBERATE INDIFFERENCE AGAINST THE MUNICIPAL DEFENDANTS MUST BE DISMISSED FOR A LACK OF EVIDENCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    V.     PLAINTIFF'S FALSE ARREST CLAIMS FAIL BECAUSE BAERGA HAD NOT ONLY PROBABLE CAUSE, BUT ALSO THE LEGAL JUSTIFICATION OF A PRIOR OUTSTANDING WARRANT.. . . . . 15

    VI.    PLAINTIFF CANNOT AS A MATTER OF LAW SUSTAIN A CLAIM OF RACIAL DISCRIMINATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    VII.   PLAINTIFF FAILS AS A MATTER OF LAW TO ESTABLISH DUE PROCESS VIOLATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    VIII.  PLAINTIFF FAILS AS A MATTER OF LAW TO ESTABLISH A CLAIM OF MALICIOUS PROSECUTION. . . . . . . . . . . . . . . . . . . . .22

    IX.    PLAINTIFF'S ALLEGATIONS OF A CONSPIRACY FAIL AS A MATTER OF LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

    X.     PLAINTIFF'S SECTION 1986 CAUSE OF ACTION MUST BE DISMISSED BECAUSE ITS SUCCESS IS CONTINGENT UPON THE VIABILITY OF AN UNDERLYING SECTION 1985 CAUSE OF ACTION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

## <u>TABLE OF AUTHORITIES</u>

Cases

<u>Alvin v. Suzuki</u>,
227 F.3d 107 (3d Cir. 2000).......................................................................... 21

<u>Anderson v. Liberty Lobby, Inc.</u>,
477 U.S. 242 (1986)................................................................................. 8, 9

<u>Baker v. McCollan</u>,
443 U.S. 137 (1979)................................................................................... 19

<u>Benn v. Universal Health Sys., Inc.</u>,
371 F.3d 165 (3d Cir. 2004).......................................................................... 20

<u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>,
974 F.2d 1358 (3d Cir. 1992)......................................................................... 8

<u>Caldwell v. City of Newfield</u>,
CIV.A. 05-1913 RMB, 2007 WL 1038695 (D.N.J. Mar. 30, 2007)............................ 16

<u>Celestine v. Foley</u>,
CIV.A. 10-1775 NLH, 2010 WL 5186145 (D.N.J. Dec. 14, 2010)............................. 21

<u>Celotex Corp. v. Catrett</u>,
477 U.S. 317 (1986).................................................................................... 8

<u>Christian v. Wal-Mart Stores, Inc.</u>,
252 F.3d 862 (6th Cir. 2001) ........................................................................ 18

<u>Clark v. Clabaugh</u>,
20 F.3d 1290 (3d Cir. 1994)........................................................................... 25

<u>County of Sacramento v. Lewis</u>,
523 U.S. 833 (1998)................................................................................... 20

<u>Curley v. Klem</u>,
499 F.3d 199 (3d Cir. 2007).......................................................................... 11

<u>Daniels v. Williams</u>,
474 U.S. 327 (1986)................................................................................... 13

<u>Davidson v. O'Lone</u>,
752 F.2d 817 (3d Cir. 1984),......................................................................... 13

Dowling v. City of Philadelphia,
855 F.2d 136 (3d Cir. 1988).........................................................................15

Earle v. Winne,
14 N.J. 119 (1953) ......................................................................................15

Faber v. City of Patterson,
440 F.3d 131 (3d Cir. 2006)..........................................................................17

Gerstein v. Pugh,
420 U.S. 103 (1975)....................................................................................22

Gibson v. Superintendent of N.J. Dept. of Law & Pub. Safety-Div. of State Police,
411 F.3d 427 (3d Cir. 2005)..........................................................................15

Gilles v. Davis,
427 F.3d 197 (3d Cir. 2005)..........................................................................10

Gomez v. Toledo,
446 U.S. 635 (1980)....................................................................................19

Gonzalez v. Feiner,
131 F. App'x 373 (3d Cir. 2005) ...................................................................18

Gramenos v. Jewel Cos.,
797 F.2d 432 (7th Cir. 1986) ........................................................................12

Grimm v. Churchill,
932 F.2d 674 (7th Cir. 1991) ........................................................................12

Harlow v. Fitzgerald,
457 U.S. 800 (1982)....................................................................................10

Hayes v. Mercer County,
217 N.J. Super. 614 (App. Div. 1987) ............................................................15

Hill v. Abercrombie & Fitch,
ELH-11-00910, 2011 WL 4433573 (D. Md. Sept. 20, 2011)...............................18

Hunter v. Bryant,
502 U.S. 224 (1991)....................................................................................11

Jacobs v. Arvonio,
CIV. A. 91-2473, 1993 WL 285854  (D.N.J. July 27, 1993)................................13

Kossler v. Crisanti,
564 F.3d 181 (3d Cir. 2009).................................................................. 22

Lake v. Arnold,
112 F.3d 682 (3d Cir. 1997).................................................................. 19

Lee v. Mihalich,
847 F.2d 66 (3d Cir. 1988).................................................................... 23

Lee-Patterson v. New Jersey Transit Bus Operations, Inc.,
957 F. Supp. 1391 (D.N.J. 1997) .......................................................... 24

Mitchell v. Forsyth,
472 U.S. 511 (1985).............................................................................. 10

Monell v. Dep't of Social Srvs.,
436 U.S. 658 (1978).............................................................................. 14

Nat'l Amusements, Inc. v. Borough of Palmyra,
843 F. Supp. 2d 538 (D.N.J. 2012) ...................................................... 20

Orsatti v. N.J. State Police,
71 F.3d 480 (3d Cir. 1995).................................................................... 11

Pearson v. Callahan,
555 U.S. 223 (2009).............................................................................. 10

Price v. Phillips,
90 N.J. Super. 480 (App. Div. 1966) .................................................... 15

Pro v. Donatucci,
81 F.3d 1283 (3d Cir. 1996).................................................................. 11

Ramos v. Gallo,
596 F.Supp. 833 (D. Mass. 1984) ........................................................ 21

Renchenski v. Williams,
622 F.3d 315 (3d Cir. 2010).................................................................. 20

Rivkin v. Dover Twp. Rent Leveling Bd.,
143 N.J. 352 (1996) .............................................................................. 21

Rochin v. California,
342 U.S. 165 (1952).............................................................................. 20

Rode v. Dellarciprete,
845 F.2d 1195 (3d Cir. 1988)..........................................................................13

Roman Check Cashing, Inc. v. New Jersey Dep't of Banking and Ins.,
169 N.J. 105 (2001) ........................................................................................20

Roth v. Golden Nugget Casino/Hotel, Inc.,
576 F. Supp. 262 (D.N.J. 1983) ......................................................................15

Russo v. Voorhees Twp.,
403 F. Supp.2d 352 (D.N.J. 2005) ..................................................................24

Santiago v. City of Vineland,
107 F. Supp. 2d 512 (D.N.J. 2000) .................................................................22

Schneider v. Simonini,
163 N.J. 336(2000) .........................................................................................10

Sharrar v. Felsing,
128 F.3d 810 (3d Cir. 1997)............................................................................15

Simmons v. City of Philadelphia,
947 F.2d 1042 (3rd Cir. 1991) ........................................................................14

Skevofilax v. Quigley,
586 F. Supp. 532 (D.N.J. 1984) ......................................................................13

Spiegel v. City of Chicago,
920 F. Supp. 891 (N.D.Ill.1996) .....................................................................12

Spiegel v. Cortese,
966 F. Supp. 684 (N.D. Ill. 1997) ...................................................................23

State ex rel. Cnty. of Cumberland v. One 1990 Ford Thunderbird,
371 N.J. Super. 228 (App.Div.2004) ..............................................................20

Sterling v. Kazmierczak,
983 F. Supp. 1186 (N.D. Ill. 1997) .................................................11, 16, 22

Trafton v. City of Woodbury,
799 F. Supp.2d 417 (D.N.J. 2011) ..................................................................19

Trap Rock Indus., Inc. v. Local 825,
982 F.2d 884 (3d Cir. 1992)..............................................................................9

United States v. Dento,
382 F.2d 361 (3d Cir. 1967)..................................................................... 12, 16

White v. Williams,
179 F. Supp. 2d 405 (D.N.J. 2002) ................................................................ 17

Whren v. U.S.,
517 U.S. 806 (1996)..................................................................................... 16

Williams v. New Jersey Div. of State Police,
CIV. 10-3478 DRD, 2012 WL 1900602 (D.N.J. May 24, 2012) ........................................... 10, 11

Statutes

42 U.S.C. § 1981 ................................................................................... 10

42 U.S.C. § 1983............................................................................... 10,19

42 U.S.C. § 1985 ................................................................................ 10, 24

42 U.S.C. § 1986 ................................................................................ 10, 25

N.J.S.A. 10:6-2................................................................................... 19

Rules

Fed.R.Civ.P. 56(c) ............................................................................... 8

## **PRELIMINARY STATEMENT**

Plaintiff Hazelann Applewhite entered the Tory Burch store at the Short Hills Mall in Millburn, New Jersey on January 30, 2011.  After browsing through the store for 30 minutes she brought a number of items to the counter – some to purchase and others to exchange for store credit, claiming that she had purchased a pair of shorts and two Blackberry covers at one of two other Tory Burch stores in New York.  She did not have receipts to substantiate the alleged prior purchases.

The clerk went to the back room.  The plaintiff sat in the waiting area for approximately half an hour.  During that time, an employee emerged and asked Applewhite where and when she had purchased the shorts and Blackberry covers.  Tory Burch personnel subsequently advised Millburn police that they reviewed surveillance footage and saw Applewhite take from their display consoles the items that she had presented for store credit as purchased at another Tory Burch store.

Tory Burch summoned the Millburn Police Department.  At approximately 5:00pm, Officer Bryant Baerga, who had been notified of the suspected shoplifting, arrived at Tory Burch.  Baerga proceeded to the back room of Tory Burch where Tory Burch Assistant Manager Larrington Hope told Baerga that Applewhite had taken the Blackberry covers and shorts from display consoles and presented them for store credit.  Baerga viewed the surveillance footage.  He saw what he believed to be the plaintiff taking from the display consoles the items which she subsequently presented for store credit.  While Baerga was investigating, police dispatch notified Baerga that Applewhite had an outstanding traffic warrant from Wayne, New Jersey.

1

Applewhite was placed under arrest for shoplifting and taken to the Millburn Police Department, where she posted $558 bail for the traffic warrant. Tory Burch determined to charge her with shoplifting. She was charged with shoplifting and released on her own recognizance.

Ultimately the shoplifting charges were dismissed at the request of the municipal prosecutor because Tory Burch lost the surveillance video which Hope and Baerga had viewed.

Applewhite filed this lawsuit for damages on account of alleged racial discrimination, due process violations, Fourth Amendment violations, and conspiracy to violate her civil rights. She also alleges liability for the torts of false arrest and malicious prosecution.

The plaintiff cannot sustain her burden of proof on any of her claims against any of the defendants. The civil rights claims against Baerga and Barber fail on the grounds of qualified immunity and the civil rights claims against the municipal defendants fail for lack of evidence of a policy, practice or custom of violating the civil rights of similarly situated arrestees. Further, even without qualified immunity, the defendants must prevail on all civil rights and tort claims on their merits. The plaintiff has brought forth no evidence that any racial or otherwise improper motive informed the actions of any of the Millburn Defendants.

The tort and Fourth Amendment claims for false arrest fail on the basis of not only probable cause, but also legal justification for the arrest. Specifically, even if Baerga had arrested Applewhite for shoplifting in error, he still was under a duty to place her under arrest and take her to the police station pursuant to the traffic warrant.

The existence of probable cause also requires dismissal of the tort and Fourth Amendment claims for false arrest and malicious prosecution.  Baerga had probable cause based upon the reliable report of a security officer.  Finally, plaintiff fails as a matter of law to establish a violation of her due process rights.  Defendants therefore move for Summary Judgment.

## **FACTUAL BACKGROUND**

On the afternoon of January 30, 2011, the plaintiff, who is an African-American woman, entered the Tory Burch boutique in the Short Hills Mall in Milburn, New Jersey. (**Exhibit A**, Complaint at ¶ ¶ 1, 13)  The plaintiff claims that she entered the store with a pair of shorts and two Blackberry covers that she had purchased with cash at another Tory Burch.  (**Exhibit A**, Complaint at ¶ ¶ 14-15; **Exhibit J**, Plaintiff's Deposition at 16:20-22, 18:6-19:1)  She had no receipts for the items, claiming that she had misplaced them.  (**Exhibit J**, Plaintiff's Deposition at 18:6-19:1)

Once she entered the store, the plaintiff proceeded to walk around the store for approximately thirty minutes.  (**Exhibit J**, Plaintiff's Deposition at 17:2-4)  Afterwards, the plaintiff presented the two Blackberry covers and a pair of shorts to an unidentified store clerk, seeking store credit.  (**Exhibit A**, Complaint at ¶ ¶ 14-15; **Exhibit J**, Plaintiff's Deposition at 15:18-16:1)   The clerk took the items to the back room. (**Exhibit J**, Plaintiff's Deposition at 17:19-23)  The plaintiff waited in the seating area. (**Exhibit J**, Plaintiff's Deposition at 17:14-18:1)  During the next half hour, a black man came out of the back room twice and asked Applewhite when and where she had purchased the items.  (**Exhibit J**, Plaintiff's Deposition at 18:2-20:12)

During the period that Applewhite was sitting in the waiting area, Tory Burch's Assistant General Manager, Larrington "Shone" Hope, investigated what he believed was a case of attempted shoplifting.  (See **Exhibit A**, Complaint at ¶ 16; **Exhibit C**, Incident Report at 1)  Hope stated that he recognized the items that Applewhite was attempting to return as coming from a display console in the store.  (**Exhibit D**, Larrington Hope's Statement)  He checked the display console and saw that the items Applewhite had

presented for return were missing from the display.  (**Exhibit D**, Larrington Hope's Statement)  Hope then looked at security surveillance footage and saw Applewhite pick up the Blackberry cases and put them into the left pocket of her jacket.  He then saw her pick up the pants that she subsequently described as a gift that she wished to return. (**Exhibit D,** Larrington Hope's Statement; **Exhibit C**, Incident Report at 1)

On the afternoon in question, Millburn Township Police Officer Bryant Baerga and a backup officer reported to the Tory Burch boutique in the Short Hills Mall to investigate an alleged shoplifting.  (**Exhibit F**, Bryant Baerga's Answer to Interrogatory # 13)  Baerga went into the back room where Hope told Baerga that Applewhite had presented items for return and that he saw the items were missing from the store's display console.  (**Exhibit F**, Bryant Baerga's Answer to Interrogatory # 13; **Affidavit of Bryant Baerga** at ¶ 6).  Hope further told Baerga and that security surveillance footage showed Applewhite take the items that she presented to the clerk for store credit.  (**Exhibit F**, Bryant Baerga's Answer to Interrogatory # 13; **Affidavit of Bryant Baerga** at ¶ 6) Nothing about Hope or the attendant circumstances led Baerga to believe that Hope's report was not trustworthy.  (**Affidavit of Bryant Baerga** at ¶ 7)  Baerga himself reviewed the surveillance footage of Applewhite taking items from the store display console and concealing them on her person.  (**Exhibit C**, Incident Report at 1; **Exhibit F**, Bryant Baerga's Answer to Interrogatory # 13)

While Baerga was investigating at Tory Burch, Millburn police dispatch conducted a warrant search on Applewhite and discovered that she had an outstanding traffic warrant from Wayne, New Jersey.  (**Exhibit C**, Incident Report at 1; **Exhibit F**, Bryant Baerga's Answer to Interrogatory # 13; **Affidavit of Bryant Baerga** at ¶ 10)

Based upon the evidence presented and the outstanding warrant, Officer Baerga placed Applewhite under arrest, read her Miranda rights, and took her to headquarters for processing.  (**Affidavit of Bryant Baerga** at ¶ ¶ 11, 17; **Exhibit C**, Incident Report at 1)

Officer Baerga did not request nor take the merchandise with him from the store pursuant to his understanding of police protocol not to take undamaged merchandise from the scene of a shoplifting arrest when the arrest takes place in the location of the alleged theft.  (**Affidavit of Bryant Baerga** at ¶ 13)  He completed paperwork to facilitate the filing of criminal charges at the request of Tory Burch.  (**Affidavit of Bryant Baerga** at ¶ 18)  Applewhite was released on her own recognizance after posting $558 bail for her traffic warrant and being charged with 2C:20-11(b)(2).  (**Exhibit C**, Incident Report at 1)  Tory Burch indicated that it wanted to prosecute the case.  (**Exhibit C**, Incident Report at ¶ 1)

Officer Baerga did not take a copy of the digital surveillance footage he viewed.  (**Affidavit of Bryant Baerga** at ¶ 14)  The complainant has the responsibility of making a copy of surveillance footage or to request that the Detective Bureau make a copy.  (**Affidavit of Bryant Baerga** at ¶ 14)  Tory Burch did not make such a request to the Detective Bureau.  (**Affidavit of Bryant Baerga** at ¶ 14)

The prosecutor requested a CD of the footage on February 22, 2011 from Larrington Hope.  (**Exhibit G**, Hope-Bennett e-mails at 1)  Hope attempted to make a copy of the footage before attending a court date on March 22, 2011.  (**Exhibit G,** Hope-Bennett E-mails at 3-6; **Exhibit I**, Deposition of Sean Bennett at 69:12-19, 72:11-17)  Hope experienced difficulties verifying that he had correctly copied the footage for the prosecutor before reporting to court.  (**Exhibit G**, Hope-Bennett E-mails at 3-6; see also

**Exhibit I**, Deposition of Sean Bennett at 72:11-75:11)   Hope handed a CD to the Evidence Bureau which contained what he believed was the surveillance footage that led him to believe that Applewhite had attempted to shoplift.  (**Exhibit G**, Hope-Bennett E-mails at 3)

The surveillance video system is on a loop that tapes over itself cyclically, typically every 30 to 60 days.  (**Exhibit I**, Deposition of Sean Bennett at 80:21-83:25) The day that Larrington Hope made a copy of surveillance video, March 22, 2011, was forty-one days after the incident.  (See **Exhibit G**, Hope-Bennett E-mails at 3-6)  When the municipal prosecutor moved to dismiss the charges against Applewhite on June 20, 2011, he stated that when he and Hope watched the footage together, they realized that Hope had not captured the footage he claimed to have observed on January 30, 2011, and that the original, incriminating footage had been deleted by that time.  (**Exhibit E**, Court Transcript at 4:19-5:2)  The prosecutor made a motion to dismiss the shoplifting charges against Applewhite on June 20, 2011 because the incriminating video had been lost, and the prosecutor conceded that he could not prove Applewhite's guilt beyond a reasonable doubt.  (**Exhibit E**, Court Transcript at 4:3-6:1)

**LEGAL ARGUMENT**

**POINT I**

**APPLICATION OF FEDERAL RULE OF CIVIL PROCEDURE 56(C) REQUIRES DISMISSAL OF THE COMPLAINT**.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The party moving for summary judgment has the initial burden of showing the basis for its motion.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Ultimately, the moving party bears the burden of showing that there is an absence of evidence to support the nonmoving party's case.  See id. at 325.  Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial.  See id. at 324.  A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under applicable rule of law.  See id.

When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the nonmovant.  See, Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) cert. denied, 507 U.S. 912 (1993).  Moreover, a court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's

evidence far outweighs that of its opponent.  See id.  Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements.  See Trap Rock Indus., Inc. v. Local 825, 982 F.2d 884, 890 (3d Cir. 1992).  The court's inquiry at the summary judgment stage is the threshold inquiry of determining whether there is need for a trial; that is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  See Anderson, supra, 477 U.S. at 250-52.

Here, as discussed in the rest of this brief, there are no genuine issues of material fact.  Therefore, the defendants' Motion for Summary Judgment should be granted.

**POINT II**

**QUALIFIED IMMUNITY SHIELDS BARBER AND BAERGA FROM PLAINTIFF'S CIVIL RIGHTS CLAIMS.**

In each Count of the Complaint, the plaintiff alleges violations of her federal and/or state civil rights.  She seeks damages for these violations under 42 U.S.C. § 1983 and the analogous New Jersey Civil Rights Act (NJCRA) in Counts I, II, III, IV, and VIII, under 42 U.S.C. § 1981 in Count V, under 42 U.S.C. § 1985 in Count VI, and under 42 U.S.C. § 1986 in Count VII.  These Counts of the Complaint must be dismissed against Officer Baerga and Chief Barber pursuant to qualified immunity, which is a viable affirmative defense to both Section 1983 claims and NJCRA claims.  Williams v. New Jersey Div. of State Police, CIV. 10-3478 DRD, 2012 WL 1900602 at *15 (D.N.J. May 24, 2012).  (**Exhibit O**)

Under the theory of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Schneider v. Simonini, 163 N.J. 336, 354 (2000) cert. denied, 531 U.S. 1146 (2001) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity is "an immunity from suit rather than a mere defense to liability."  Pearson v. Callahan, 555 U.S. 223, 237 (2009) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

"Qualified immunity encompasses mistaken judgments that are not plainly incompetent."  Gilles v. Davis, 427 F.3d 197, 207 (3d Cir. 2005).  "The appropriate standard for qualified immunity . . . is whether reasonable officials in the defendants'

10

position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful." Pro v. Donatucci, 81 F.3d 1283, 1291 (3d Cir. 1996). Whether an officer is thus entitled to qualified immunity is a question of law that is properly answered by the court. Curley v. Klem, 499 F.3d 199, 211 (3d Cir. 2007).

"[I]n the context of a claim of false arrest and imprisonment by a police officer, the officer is entitled to qualified immunity when 'a reasonable officer could have believed that probable cause existed to arrest' the plaintiff." Williams v. New Jersey Div. of State Police, CIV. 10-3478 DRD, 2012 WL 1900602 at *14 (D.N.J. May 24, 2012) (quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991)). (**Exhibit O**) "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995).

In this case, Officer Baerga's arrest of the plaintiff for shoplifting was made on the basis of the report of a loss prevention officer whom he reasonably believed to be trustworthy, corroborated by review of a surveillance tape which he reasonably believed to support the complainant's account. The arrest complied with clearly established law. Baerga therefore had a reasonable basis to believe that probable cause existed, and he is entitled to qualified immunity.

The law permits police officers to make warrantless arrests when a security officer reports to the police officer that he has witnessed the suspect shoplift, and there is no basis for the officer to reasonably suspect the report is faulty. In Sterling v. Kazmierczak, 983 F. Supp. 1186, 1190 (N.D. Ill. 1997), the court wrote, "An officer is

11

reasonably entitled to rely on information provided by a store security guard if there are no facts which would lead a reasonable officer to question the guard's veracity." Id. at 1190 (citing Gramenos v. Jewel Cos., 797 F.2d 432, 439 (7th Cir. 1986)). "Normally, when an arresting officer has received his information from some person—normally the putative victim or an eye witness—who it seems reasonable to believe is telling the truth, the officer has probable cause to make the arrest." Id. at 1190 (citing Grimm v. Churchill, 932 F.2d 674, 675 (7th Cir. 1991); Gramenos v. Jewel Cos., 797 F.2d 432, 439 (7th Cir. 1986); Spiegel v. City of Chicago, 920 F. Supp. 891, 896 (N.D.Ill.1996)). This is consistent with Third Circuit law. See United States v. Dento, 382 F.2d 361, 364 (3d Cir. 1967) ("But it seems clear that if facts, sufficient upon which to base probable cause, known to the arresting officers are received through some chain of communication, that chain of information from its source to the resulting arrest must be constructed with reliable links.").

In this case, the arrest was based upon information that came through "reliable links." Dento, 382 F.2d at 364. A security officer, Larrington Hope, told Officer Baerga that he saw surveillance footage of Applewhite picking up the items that that she presented to the clerk for store credit. Hope also reported that he had verified these items were missing from the display consoles. The plaintiff has brought forth no evidence that Officer Baerga should have reasonably suspected that Hope was lying. He thus made a legal arrest for shoplifting and is entitled to qualified immunity, as is former Chief David Barber, against whom no factually-supported assertions of wrongdoing have been asserted.

## POINT III

**THE SECTION 1983 CLAIMS AGAINST CHIEF BARBER MUST BE DISMISSED FOR FAILURE TO SHOW EVIDENCE OF DELIBERATE INDIFFERENCE.**

Even if he were not entitled to qualified immunity, the Section 1983 supervisor liability claims against David Barber in Counts I, II, III, and VIII must be dismissed. A Section 1983 claim cannot be based solely upon the doctrine of respondeat superior; the supervisor must have some personal involvement. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). The necessary involvement can be shown "through allegations of personal direction or of actual knowledge and acquiescence." Ibid. At the least, there must be some causal connection between an act of the official and the alleged violation. Skevofilax v. Quigley, 586 F. Supp. 532, 543 (D.N.J. 1984).

Moreover, in order to succeed on a constitutional claim against an individual municipal officer, a plaintiff must show that the official had notice of a danger and either acted intentionally or exhibited deliberate indifference to or a callous disregard for the plaintiff's constitutional rights. Jacobs v. Arvonio, CIV. A. 91-2473, 1993 WL 285854 at *5 (D.N.J. July 27, 1993) (citing Davidson v. O'Lone, 752 F.2d 817, 828 (3d Cir. 1984), aff'd sub nom., Davidson v. Cannon, 474 U.S. 344 (1986)). An allegation of mere negligence is insufficient. Daniels v. Williams, 474 U.S. 327, 329-30 (1986).

The plaintiff has not brought forth any evidence to show that Barber was aware of any constitutional violations or that he acted with deliberate indifference or callous disregard for the Plaintiff's constitutional rights. Therefore, all Counts of the Complaint against Barber must be dismissed.

**POINT IV**

**THE SECTION 1983 CLAIM FOR DELIBERATE INDIFFERENCE AGAINST THE MUNICIPAL DEFENDANTS MUST BE DISMISSED FOR A LACK OF EVIDENCE.**

In Count IV of the Complaint, the plaintiff alleges that Millburn Township and Millburn Police Department are liable for constitutional violations by maintaining policies or customs exhibiting deliberate indifference to Constitutional rights of the plaintiff. Simmons v. City of Philadelphia, 947 F.2d 1042 (3rd Cir. 1991), cert. denied, 503 U.S. 985 (1992) and Monell v. Dep't of Social Srvs., 436 U.S. 658 (1978) govern constitutional claims against a municipality.

The Third Circuit in Simmons held that a municipality may be held liable for a constitutional injury when (1) particular policymaking officials within the municipality promulgated or acquiesced in a municipal policy or custom; (2) the policymaking official was deliberately indifferent to the constitutional rights of the municipality's citizens; and (3) the policy or custom proximately caused a constitutional injury. 947 F.2d at 1060-62. The plaintiff has produced no evidence tending to prove any policy or custom of deliberate indifference. Accordingly, Count IV must be dismissed.

14

**POINT V**

**PLAINTIFF'S FALSE ARREST CLAIMS FAIL BECAUSE BAERGA HAD NOT ONLY PROBABLE CAUSE, BUT ALSO THE LEGAL JUSTIFICATION OF A PRIOR OUTSTANDING WARRANT.**

Read indulgently, Count III of the Complaint asserts either a common law tort of false arrest / false imprisonment or a Fourth Amendment claim of false arrest.  In New Jersey, false arrest and false imprisonment are merely separate names for the same tort.  Roth v. Golden Nugget Casino/Hotel, Inc., 576 F. Supp. 262, 265 (D.N.J. 1983) (citing Price v. Phillips, 90 N.J. Super. 480, 484 (App. Div. 1966)).  "This tort is established upon a showing that the plaintiff's liberty was unlawfully constrained as a result of force, or the threat of force, on the part of the defendant."  Ibid. (citing Earle v. Winne, 14 N.J. 119, 128 (1953)).

To prove a tort or Fourth Amendment claim for false arrest, the plaintiff must show evidence of (1) an arrest; and (2) a lack of probable cause.  See Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).  "Legal justification or probable cause for detention are the defenses to an action for false arrest or imprisonment."  Hayes v. Mercer County, 217 N.J. Super. 614, 623 (App. Div. 1987).  Under the Fourth Amendment, legal justification and probable cause are also defenses.  See Gibson v. Superintendent of N.J. Dept. of Law & Pub. Safety-Div. of State Police, 411 F.3d 427, 451 (3d Cir. 2005); Sharrar v. Felsing, 128 F.3d 810, 817-18 (3d Cir. 1997).

In this case, there was a legal justification for the arrest of Ms. Applewhite.  At the time of the arrest, Ms. Applewhite had an outstanding traffic warrant.  Officer Baerga was therefore under a duty to arrest her for the traffic warrant.  Even if the shoplifting charges had been baseless – which clearly they were not – the arrest for the traffic

warrant renders further inquiry unnecessary because the arrest was independently justified based on the outstanding warrant.  See Caldwell v. City of Newfield, CIV.A. 05-1913 RMB, 2007 WL 1038695 (D.N.J. Mar. 30, 2007) (citing Whren v. U.S., 517 U.S. 806, 813 (1996) ("[W]here a police officer has ulterior motives, such as racial profiling, the stop is lawful under the Fourth Amendment if it is supported by an objectively reasonable justification.").  (**Exhibit K**)

The arrest was also legal due to the presence of probable cause.  Probable cause existed because a security officer reported the suspected shoplifting to Officer Baerga, and Officer Baerga had no basis to suspect that the security guard's report was false.  This satisfies a showing of probable cause and warrants dismissal.  See Sterling v. Kazmierczak, supra, 983 F. Supp. at 1190; United States v. Dento, supra, 382 F.2d at 364.

**POINT VI**

**PLAINTIFF CANNOT AS A MATTER OF LAW SUSTAIN A CLAIM OF RACIAL DISCRIMINATION.**

In Counts V and VI of the Complaint, the plaintiff seeks damages pursuant to Sections 1981 and 1985 for racial discrimination.  These claims must be dismissed because discovery has failed to yield any evidence that any act of any defendant was racially motivated.  To establish a prima facie case under Section 1981, a plaintiff must demonstrate that: (1) the plaintiff is a racial minority; (2) the defendant discriminated against plaintiff; (3) the defendant had an intent to discriminate on the basis of race; and (4) the discrimination concerned one or more of the activities enumerated in the statute. White v. Williams, 179 F. Supp. 2d 405, 420 (D.N.J. 2002).

Similarly, a plaintiff seeking relief under Section 1985 must show evidence of both a conspiracy and racial animus.  Faber v. City of Patterson, 440 F.3d 131, 134-35 (3d Cir. 2006).  While the plaintiff testified that she felt she was singled out because of her race, she admitted that no defendant exhibited any action tending to show a race-based motive.  (**Exhibit J**, Plaintiff's Deposition at 31:9-32:18)  She could point to no police action that indicated racial animus.

The Plaintiff explained at her deposition that salespeople at high -end stores often follow her, and she feels that this is evidence of racial discrimination.  (**Exhibit J**, Plaintiff's Deposition at 101:17-102:24)  But the plaintiff admitted that no one followed her at Tory Burch.  (**Exhibit J**, Plaintiff's Deposition at 102:22-24)  The remnants of the surveillance footage further evidence that the plaintiff was not subjected to special attention as she browsed the store.  (**Exhibit R**, Surveillance Footage)  Thus the

17

plaintiff's only evidence of racial discrimination is her subjective beliefs, which are not sufficient to sustain her 1981 and 1985 claims.

Hill v. Abercrombie & Fitch, ELH-11-00910, 2011 WL 4433573 (D. Md. Sept. 20, 2011) presents a fact pattern very closely on point. (**Exhibit L**)  In that case, an Abercromie & Fitch employee reported to mall security officers that he suspected the plaintiff, an African-American, was in the process of stealing.  The mall security officers prevented the plaintiff from completing his purchase and escorted him off the premises.  The court found no evidence of racial animus sufficient to sustain at Section 1981 claim.  Id. at *5 ("All of the allegations reflect that the disputed conduct was prompted by the belief that . . .  plaintiff's actions were consistent with attempted shoplifting.").  See also Gonzalez v. Feiner, 131 F. App'x 373, 377-78 (3d Cir. 2005) (finding no evidence of racial discrimination against police officer where a masked man in a police officer's car temporarily confronted two African-American plaintiffs with a gun) (**Exhibit Q**); contrast with Christian v. Wal-Mart Stores, Inc., 252 F.3d 862, 867 opinion supplemented on denial of reh'g, 266 F.3d 407 (6th Cir. 2001) (finding that plaintiff demonstrated evidence of racial discrimination with testimony that store personnel closely followed her before police stopped her for shoplifting).

Counts V and VI must be dismissed due to a lack of any objective evidence of discrimination.

**POINT VII**

**PLAINTIFF FAILS AS A MATTER OF LAW TO ESTABLISH DUE PROCESS VIOLATIONS.**

In Count I of the Complaint, the plaintiff seeks damages pursuant to 42 U.S.C. § 1983 for violations of due process rights guaranteed by the Fourteenth Amendment of the United States Constitution.  In Count II of the Complaint, the plaintiff seeks damages pursuant to the New Jersey Civil Rights Act, N.J.S.A. 10:6-2 for violations of analogous due process rights secured under Article I of the New Jersey State Constitution.  Even if qualified immunity did not require dismissal of these claims, they would still fail on the merits.

Section 1983 is not itself a source of substantive rights, but provides only "a method for vindicating federal rights elsewhere conferred."  See Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979).  The New Jersey Civil Rights Act (hereinafter "NJCRA") was modeled after 42 U.S.C. § 1983 and creates a private cause of action for violations of civil rights secured under the New Jersey Constitution.  Trafton v. City of Woodbury, 799 F. Supp.2d 417, 443 (D.N.J. 2011).  This District has repeatedly interpreted NJCRA analogously to Section 1983.  Ibid. (internal citations omitted).

To establish a claim under Section 1983, a plaintiff must allege (1) a deprivation of a federally protected right, and (2) commission of the deprivation by one acting under the color of state law.  Lake v. Arnold, 112 F.3d 682, 689 (3d Cir. 1997); Gomez v. Toledo, 446 U.S. 635, 640 (1980).  The plaintiff alleges police officers acting under color of state law violated her due process rights.  However, there is no evidence to sustain the claim.

19

The plaintiff has not specified whether she is seeking damages for violations of procedural or substantive due process.  Either must fail.

"The Due Process Clause of the Fourteenth Amendment provides that no State shall 'deprive any person of life, liberty, or property, without due process of law.'" Renchenski v. Williams, 622 F.3d 315, 325 (3d Cir. 2010) (quoting U.S. Const. amend. XIV, § 1).  "State and federal procedural due process claims utilize the same standard." Nat'l Amusements, Inc. v. Borough of Palmyra, 843 F. Supp. 2d 538, 544 (D.N.J. 2012) (citing State ex rel. Cnty. of Cumberland v. One 1990 Ford Thunderbird, 371 N.J. Super. 228, 244 (App.Div.2004)).  In cases raising substantive due process claims under the New Jersey Constitution, this court uses the "'standards developed by the United States Supreme Court under the federal Constitution,' meaning that analysis of the claim 'is the same under both constitutions.'"  Allah v. Hayman, 2011 WL 1322186 (D.N.J. Apr. 1, 2011) appeal dismissed, 442 F. App'x 632 (3d Cir. 2011) (quoting Roman Check Cashing, Inc. v. New Jersey Dep't of Banking and Ins., 169 N.J. 105 (2001).  (**Exhibit M**)

### 1. *Substantive due process*

 "[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  County of Sacramento v. Lewis, 523 U.S. 833, 847 n. 8 (1998).  Whether an incident "shocks the conscience" is a matter of law for the courts to decide.  Benn v. Universal Health Sys., Inc., 371 F.3d 165, 174 (3d Cir. 2004) (citing Rochin v. California, 342 U.S. 165, 172 (1952)).  Under the Federal Constitution, findings of substantive due process violations are typically limited

to "'state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning and harmful as literally to shock the conscience of a court.'" <u>Rivkin v. Dover Twp. Rent Leveling Bd.</u>, 143 N.J. 352, 365 (1996) (quoting <u>Ramos v. Gallo</u>, 596 F.Supp. 833, 837 (D. Mass. 1984)).  The Supreme Court of New Jersey notes that "the collective conscience of the United States Supreme Court is not easily shocked." <u>Rivkin</u>, 143 N.J. at 366.  No act or omission of any defendant in this case remotely reaches the level of conscience-shocking behavior.

### 2. Procedural Due Process

"A court reviewing a procedural due process claim first determines whether the plaintiff asserts an interest protected by the Fourteenth Amendment." <u>Renchenski</u>, 622 F.3d at 325 (citing <u>Alvin v. Suzuki</u>, 227 F.3d 107, 116 (3d Cir. 2000)).  "If the court concludes that such an interest exists, the next issue is whether the procedures provided to the plaintiff afforded that individual due process of law." <u>Ibid.</u>

In this case, the plaintiff has not stated a claim for violation of procedural due process.  Not only was the arrest procedurally appropriate based upon the underlying traffic warrant, but the plaintiff has not articulated "what, if any, procedural safeguards were lacking." <u>Celestine v. Foley</u>, CIV.A. 10-1775 NLH, 2010 WL 5186145 (D.N.J. Dec. 14, 2010).  (**Exhibit N**)  It was her exercise of her procedural right to a trial that culminated in the dismissal of the charges.  Thus as a matter of law, the plaintiff received the process due her.

**POINT VIII**

**PLAINTIFF FAILS AS A MATTER OF LAW TO ESTABLISH A CLAIM OF MALICIOUS PROSECUTION.**

In Count VIII of the Complaint, the plaintiff alleges the tort of malicious prosecution.  To prove malicious prosecution, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."  Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009).  In this case, the plaintiff cannot prove the third or fourth elements.

First, the plaintiff cannot show a lack of probable cause.  "While probable cause to arrest requires more than mere suspicion, the law recognizes that probable cause determinations have to be made 'on the spot' under pressure and do 'not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands.'"  Santiago v. City of Vineland, 107 F. Supp. 2d 512, 561 (D.N.J. 2000) (citing Gerstein v. Pugh, 420 U.S. 103, 121 (1975)).

Even if Officer Baerga had never seen the video to corroborate the store employee's account, he still would have had reason to arrest Applewhite for shoplifting because there was no reason to question the veracity of Hope's statement.  Sterling v. Kazmierczak, 983 F. Supp. 1186, 1190 (N.D. Ill. 1997) ("An officer is reasonably entitled to rely on information provided by a store security guard if there are no facts

22

which would lead a reasonable officer to question the guard's veracity.").  The report of a security guard does not normally merit suspicion of fabrication:

> [A] guard is not just any eyewitness.  The chance that the complainant is pursuing a grudge, a risk in believing an unknown witness, is small in an institutional setting.  The guard who pursues a private agenda may be fired and disgraced; there are automatic penalties that the police are entitled to consider.  The store will insist that guards err on the side of caution.  It does not want to embarrass and anger an honest customer—not only because this is bad for business but also because a false charge of crime may lead to costly tort litigation under state law.

Spiegel v. Cortese, 966 F. Supp. 684, 694 (N.D. Ill. 1997).

In this case, there was no basis to suspect that any grudge, animus, or agenda motivated Officer Baerga in making his arrest.

Second, the plaintiff has shown no evidence of malice, as none existed.  "Malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose."  Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir. 1988).  The plaintiff has brought forth no evidence demonstrating that Baerga was motivated by ill will or spite or that he did not believe in the propriety of the arrest.  There is thus no evidence of malice to support the malicious prosecution claim.

For these reasons, the court must dismiss the count of malicious prosecution against the defendants.

**POINT IX**

**PLAINTIFF'S ALLEGATIONS OF A CONSPIRACY FAIL AS A MATTER OF LAW.**

      Count VI of the Complaint alleges a conspiracy to violate the plaintiff's civil rights based on her race, in violation of 42 U.S.C. § 1985.  In addition to failing to bring forth evidence of racial animus, plaintiff cannot demonstrate the existence of an agreement among any of the actors involved in her arrest and prosecution.  "The conspiracy element of § 1985 requires a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon, and an overt act that results in that damage."  Russo v. Voorhees Twp., 403 F. Supp.2d 352, 359 (D.N.J. 2005).

      The plaintiff has brought forth nothing more than a "conclusory allegation" of a conspiracy and therefore, this cause of action cannot be sustained.  Lee-Patterson v. New Jersey Transit Bus Operations, Inc., 957 F. Supp. 1391, 1402 (D.N.J. 1997).

**POINT X**

**PLAINTIFF'S SECTION 1986 CAUSE OF ACTION MUST BE DISMISSED BECAUSE ITS SUCCESS IS CONTINGENT UPON THE VIABILITY OF AN UNDERLYING SECTION 1985 CAUSE OF ACTION.**

In Count VII, the plaintiff claims that the Millburn Defendants are liable for violation of 42 U.S.C. § 1986.  42 U.S.C. § 1986 will hold a person liable if he knows of a conspiracy to violate a plaintiff's civil rights in violation of Section 1985, has the power to prevent the violation, and fails to do so.  See Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994) ("[T]ransgressions of § 1986 by definition depend on a preexisting violation of § 1985.")  This cause of action must be dismissed for lack of evidence of a conspiracy under Section 1985.

## <u>CONCLUSION</u>

Based on the foregoing, the Township of Millburn, Officer Baerga, and Chief Barber request entry of Summary Judgment dismissing the Complaint with prejudice.

Respectfully submitted,

**METHFESSEL & WERBEL, ESQS.**
Attorneys for Township of Millburn,
Township of Millburn Police Department,
Bryant Baerga, and David Barber

By:_____
      Eric L. Harrison

DATED: 11/20/12

26