UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HAZELANN N. APPLEWHITE,<br><br>                     Plaintiff,<br>v.<br><br>TOWNSHIP OF MILLBURN, THE MILLBURN TOWNSHIP POLICE DEPARTMENT, BRYANT BAERGA, DAVID A. BARBER, TORY BURCH, LLC, TORY BURCH SHORT HILLS.<br><br>                     Defendants. | Civil Action No.: 11-6957 (ES) (JAD)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

      Pending before this Court is Defendants Township of Millburn ("Millburn"), the Millburn Township Police Department ("Millburn PD"), Police Officer Bryant Baerga ("Baerga") and Police Chief David A. Barber's ("Barber") (collectively, the "Defendants") motion for summary judgment. (D.E. No. 24). The Court held oral argument on this motion on July 25, 2013. The Court has jurisdiction over this case based on 28 U.S.C. § 1331. Based on the following reasons, the Defendants' motion is GRANTED.

**I.    FACTUAL BACKGROUND AND REMAINING CLAIMS**

    **A.    Factual Background**

           **i.    Parties and Witnesses**

      This case arises from the arrest and prosecution of Plaintiff Hazelann N. Applewhite ("Applewhite" or "Plaintiff") for an outstanding traffic warrant, (D.E. No. 24-3, Cert. of Eric L. Harrison ("Harrison Cert."), Ex. C at 6, Copy of Warrant), and for allegedly shoplifting at the Tory Burch boutique in the Short Hills Mall in Millburn, New Jersey ("the Store") on January 30, 2011, (D.E. No. 24-8, Defendants' Statement of Material Facts ("Def. SOF") ¶ 1).

1

Applewhite, an African-American woman, alleges that Defendants violated her civil rights. (*Id.* ¶ 2).

The Court dismissed Defendant Tory Burch LLC (incorrectly named in the Complaint as two different parties) ("Tory Burch") with prejudice on November 20, 2012. (D.E. No. 25, Stipulation of Dismissal). The following Defendants remain in this suit: Bryant Baerga, an officer of the Millburn PD, (Def. SOF ¶ 3), David A. Barber, the police chief of the Millburn PD at the time of the alleged shoplifting, (*id.* ¶ 4), Millburn, (D.E. No. 1, Compl. ¶ 9), and the Millburn PD, (*id.* ¶ 11). Furthermore, there is one additional non-party witness in this case: Larrington Hope ("Hope"), the Assistant General Manager of the Store. (Def. SOF ¶ 6).

### ii. Applewhite Presents Merchandise for Store Credit

On the afternoon of January 30, 2011, Applewhite entered the Store and walked around the Store for approximately thirty minutes. (*Id.* ¶¶ 8-9). Applewhite presented two Blackberry covers and a pair of shorts to a store clerk, seeking store credit. (*Id.* ¶ 10). Applewhite did not have a receipt for these items. (*Id.* ¶ 11). Hope came out of the back room twice and asked Applewhite when and where she had purchased the items. (*Id.* ¶ 14). Applewhite told him that she purchased the items at other Tory Burch locations, but had since misplaced the receipts. (*Id.* ¶¶ 15-17).

Defendants claim that, while Applewhite waited for a store clerk to process the items she had presented for return, Hope reviewed surveillance footage. (*Id.* ¶ 18; D.E. No. 24-3, Harrison Cert., Ex. D, Voluntary Statement of Larrington Hope ("Written Statement of Hope"). Defendants claim that Hope recognized the items Applewhite attempted to return for store credit as coming from a display console in the Store, so he checked the console and saw the items were missing. (Def. SOF ¶¶ 19-20). Defendants claim that Hope watched surveillance footage that

showed Applewhite place two of the Store's Blackberry cases on her person, as well as pick up the pair of pants she presented for store credit. (Def. SOF ¶ 21; Written Statement of Hope). Applewhite claims that she did not steal these items. (D.E. No. 52, Plaintiff's Statement of Material Facts in Opposition ("Pl. SOF") ¶¶ 19-21).

### iii. Investigation and Arrest

Baerga arrived at the Store to investigate the alleged shoplifting and went into the back room. (Def. SOF ¶¶ 22-24). Defendants claim that Hope told Baerga that Hope had observed Applewhite conceal the items on her person and present them for store credit via surveillance footage. (*Id.* ¶ 25). Defendants further claim that nothing about Hope or the attendant circumstances led Baerga to believe that Hope's report was not "trustworthy." (*Id.* ¶ 26). Applewhite claims that Baerga's investigation took an hour and that Baerga failed to preserve evidence and later could not recall details of the surveillance footage. (Pl. SOF ¶ 26).

Defendants claim that Baerga then viewed surveillance footage that showed Applewhite taking items from the Store's display console and concealing them on her person. (Def. SOF ¶ 27). Applewhite claims, however, that she did not conceal the items on her person. (Pl. SOF ¶ 27).

Defendants claim that while Baerga was still investigating at the Store, he was informed by police dispatch that Applewhite had an outstanding traffic warrant. (Def. SOF ¶ 28). In contrast, Applewhite contends that she was first informed of the traffic warrant at the police station. (Pl. SOF ¶ 28). Baerga arrested Applewhite and took her to the police station for processing. (Def. SOF ¶¶ 29-30). Applewhite was released from police custody later that night after posting $558 for her traffic warrant. (*Id.* ¶ 36).

                iv.       **Subsequent Loss of Surveillance Footage and Hope's Inaccessibility**

Baerga did not take a copy of the surveillance footage at the time of the arrest. (Def. SOF ¶ 37). Tory Burch subsequently lost the surveillance footage.[1] (*Id.* ¶ 40). The municipal prosecutor dismissed all shoplifting charges against Applewhite after he was unable to procure the surveillance footage. (*Id.* ¶¶ 49-50). Hope was later terminated from his job with Tory Burch for shoplifting substantial amounts of merchandise from the Store, and then Tory Burch lost contact with him. (*Id.* ¶¶ 51-52).

      **B.**      **Remaining Claims**

The claims remaining in this suit are 42 U.S.C. § 1983, (Compl. ¶¶ 32-36, 44-49); N.J.S.A. 10:6-2, the New Jersey Civil Rights Act (the "NJCRA"), (Compl. ¶¶ 37-40); unlawful arrest (against Baerga and Barber only), (*id.* ¶¶ 41-43); malicious prosecution, (*id.* ¶¶ 61-68); violation of due process (*id.* ¶¶ 32-36, 44-49); 42 U.S.C. § 1981, (*id.* ¶¶ 50-53); 42 U.S.C. § 1985, (*id.* ¶¶ 54-56); 42 U.S.C. § 1986, (*id.* ¶¶ 57-60).

**II.**      **LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

---

[1] The Store's surveillance footage system periodically records over previously-recorded content. (D.E. No. 24-3, Harrison Cert., Ex. I, Deposition of Sean Bennett 80:21-83:25, Sept. 28, 2012).

Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. *See Celotex,* 477 U.S. at 324. The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

### III.   LEGAL ANALYSIS

#### A.   Police Department Liability

"In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004) (internal citations and quotations omitted). Thus, all claims against the Millburn PD are dismissed.

#### B.   Hearsay

Throughout her motion papers, Applewhite contests Defendants' facts and legal arguments by asserting hearsay. (*See* Pl. SOF ¶¶ 19-22, 25, 28, 31, 34). For example, Applewhite asserts hearsay to contest the idea that Hope told Baerga that he witnessed Applewhite shoplift via surveillance footage. (Pl. SOF ¶ 25). There, Applewhite asserts a blanket "hearsay objection" and that she did not shoplift, in response to the proffered fact that Hope told Baerga that Hope witnessed Applewhite shoplift. (*Id.*).

Applewhite's hearsay argument does not create a material issue of fact. A statement is "hearsay" if "a party offers [it] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801. Hope's accusation to Baerga could be considered hearsay if it was offered to prove that Applewhite stole. However, here the accusation statement is offered to show that Baerga perceived it. Since Baerga authenticated that he perceived Hope's accusation,

(D.E. No. 24-5, Aff. of Baerga ¶ 6), hearsay is not applicable. Thus, hearsay does not bar the Court from considering Hope's accusation and finding that Baerga was told that Applewhite stole. This analysis applies to the many generalized hearsay objections Applewhite raises. (*See* Pl. SOF ¶¶ 19-22, 25, 28, 31, 34).

    C.    **Section 1983 and NJCRA**

Applewhite asserts claims pursuant to 42 U.S.C. § 1983 for alleged violations of her rights and privileges under the United States Constitution, the Fourth Amendment, and the Fourteenth Amendment. A plaintiff may establish a § 1983 claim by showing that (1) a person acting under color of state law (2) deprived the plaintiff of rights secured by the United States Constitution or laws of the United States. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970).

In addition, Applewhite asserts claims pursuant to the NJCRA, which was modeled after 42 U.S.C. § 1983 and creates a private cause of action for violations of civil rights secured under either the United States or New Jersey Constitutions. *Szemple v. Corr. Med. Servs., Inc.*, 493 F. App'x 238, 241 (3d Cir. 2012) (stating that "the NJCRA is interpreted as analogous to § 1983"). Thus, the Court will analyze the NJCRA claim analogously to the § 1983 claim.

Analysis of a § 1983 claim begins by identifying "the exact contours of the underlying right said to have been violated and [determining] whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)). The Court will thus discuss the contours of Applewhite's rights under the Fourth and Fourteenth Amendments.

### D. Fourth Amendment Unlawful Arrest

The Court must determine whether Officer Baerga had probable cause to arrest Applewhite to decide if there was an unlawful arrest in violation of the Fourth Amendment. The Fourth Amendment provides "[t]he right of the people to be secure . . . against unreasonable searches and seizures." *U.S. Const. amend. IV*. Arrest is a form of seizure, so an improper arrest can violate the Fourth Amendment. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991). To establish a Fourth Amendment claim for unlawful arrest, Applewhite must show evidence of (1) an arrest and (2) a lack of probable cause. *See Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988).

#### i. Arrest

Defendants concede that Applewhite was arrested[2] before the traffic warrant was discovered, (Summ. J. Hearing Transcript ("S.J. Tr.") 15:13-16:2, July 25, 2013), so the Court need not analyze this issue. Thus, the Court will now address the issue of probable cause.

#### ii. Probable Cause

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). Applewhite argues that the Court should look at evidence beyond what was known to the officer at the time of the arrest, e.g. that Baerga failed to follow Millburn PD procedure. (*See, e.g.*, S.J. Tr. 23:1-5). However, the Court must analyze probable cause in accordance with the standard of *Orsatti*. Accordingly, the Court looks to the record for the facts and circumstances known to Baerga *at the time of the arrest*.

---

[2] *See Kaupp v. Texas*, 538 U.S. 626, 629 (2003) ("A seizure of the person . . . occurs when . . . the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.") (citation omitted).

### a.       Probable Cause Based on Statements of Alleged Eyewitness Hope

The Court must analyze the record to see if there is a material issue of fact about whether Hope made a statement to Baerga, accusing Applewhite of shoplifting.  Defendants proffer that the record provides that Hope told Officer Baerga that he observed "surveillance footage, which showed Applewhite take the items that she presented to the clerk for store credit."  (Def. SOF ¶ 25; Baerga Aff. ¶ 6).  Applewhite disagrees, arguing (1) it is hearsay and (2) the record demonstrates that Applewhite denies stealing.  (Pl. SOF ¶ 25; Compl. ¶¶ 16-17).  Notably, Applewhite does not present any specific facts in her brief or at oral argument that raise an issue of material fact as to whether Hope *told Baerga that Applewhite shoplifted*, rather than disputed facts about *whether Applewhite shoplifted*.[3]

Statements by victims and witnesses can satisfy probable cause by creating circumstances where a reasonable officer would believe an offense has been committed.  *See Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 789-90 (3d Cir. 2000); *see also United States v. Harness*, 453 F.3d 752, 754 (6th Cir. 2006) ("[A]n eyewitness identification will constitute sufficient probable cause unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying . . . or was in some fashion mistaken regarding his recollection of the confrontation.").[4]  Probable cause is distinct from criminal guilt, "the constitutional validity of [an] arrest does not depend on whether the suspect actually committed any crime."  *Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005).

---

[3] The Court only reviews the law of witness statements as a basis for probable cause in a cursory way, since Applewhite did not argue this point extensively at oral argument.  (*See* S.J. Tr. 16:18-32:14).

[4] The probable cause standard that applies to victim and witness statements should also apply to store employee witness statements in shoplifting cases.  *See Spiegel v. Cortese*, 966 F. Supp. 684, 694 (N.D. Ill. 1997) ("The store will insist that [employees] err on the side of caution.  It does not want to embarrass and anger an honest customer [with a false shoplifting accusation.]").

8

Whether or not Applewhite shoplifted is not dispositive of whether Baerga had probable cause to believe that she did shoplift. For the Court to find probable cause based on Hope's statement to Baerga, the Court must only determine that there is no factual dispute over whether Baerga perceived Hope's statement that Applewhite shoplifted and that Baerga had no reason to doubt the veracity of Hope's accusation. Simply put, Applewhite cites to nothing in the record that suggests a reasonable officer would have believed that Hope was lying.[5] The Court holds that there is no disputed issue of material fact with regard to Hope making a seemingly credible statement to Baerga. Thus, Baerga had probable cause to arrest Applewhite.

**b.    The Traffic Warrant**

Defendants assert that while Baerga was investigating at the Store, the Millburn police dispatch informed him that Applewhite had an outstanding traffic warrant[6] from Wayne, New Jersey. (Def. SOF ¶ 28). On the other hand, Applewhite claims that she first heard about the warrant at the police station. (Pl. SOF ¶ 28).[7] Defendants have submitted evidence that establishes that Baerga was made aware of the traffic warrant shortly after formally arresting Applewhite for shoplifting. (D.E. No. 45-2, Supp. Cert. of Gregory Weber, Audio File

---

[5] While not argued at oral argument, in her brief, Applewhite argues that the following indicates that Baerga doubted Hope's veracity: (1) Baerga was in the Store for one hour before handcuffing Applewhite; (2) Baerga failed to preserve evidence; and (3) Baerga failed to recall details of the shoplifting event. (Pl. SOF ¶ 26; D.E. No. 51, Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment ("Pl. Br.") at 20-23). Applewhite also refers to the fact that Hope was eventually convicted of shoplifting from the Store, with some of the shoplifting occurring during the month that Applewhite was arrested. (*See, e.g.*, Pl. Br. at 21, 30-31). The Court finds that these arguments do not raise a genuine issue of material fact about Hope's veracity, because a one-hour shoplifting investigation is not overly long and the rest of the facts do not bear directly on Baerga's perception of Hope's veracity *at the time of the arrest*.

[6] (Harrison Cert., Ex. C at 6).

[7] The Court notes that Applewhite's brief states incorrectly that "at his deposition, Baerga when given the opportunity to speak of the bench warrant's discovery while the parties were still in the [S]tore, failed to do so." (Pl. Br. at 9). Rather, in the deposition, Baerga stated on several occasions that he learned of the traffic warrant while the parties were still in the Store. (*See, e.g.*, D.E. No. 53-1, Certification of Spencer A. Leeds ("Leeds Cert."), Ex. A., Baerga Dep. 107:25-108:11, 145:12-21).

Attachment[8]). In light of the audio recording that clearly establishes that Baerga heard about the warrant within a very short time period of him first arresting Applewhite, there is no issue of material fact about when Baerga knew of the warrant.

"The existence of probable cause for one offense justifies the arrest and defeats [a] plaintiff's claim of false arrest-even if there was insufficient cause to arrest on the second offense alone." *Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007). "Probable cause need only exist as to any offense that could be charged under the circumstances." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) (citing *Edwards v. City of Phila.*, 860 F.2d 568, 571 n.2 (3d Cir. 1988).

There is no dispute that Baerga could lawfully arrest Applewhite once he was aware of the warrant. (S.J. Tr. 52:6-17). Construing Plaintiff's argument liberally, Plaintiff seems to argue that the arrest was unlawful because too much time had elapsed between when Baerga had probable cause to arrest Applewhite—in light of Hope's statement—and when he had probable cause to arrest based on the traffic warrant. (S.J. Tr. 52:6-10). However, Applewhite cites no law that distinguishes situations like the present facts from the long-standing precedent of *Barna* and its progeny.

Any potential question of fact that could be raised by Baerga's review of the surveillance footage is obviated by the discovery of the traffic warrant. Baerga had probable cause to arrest Applewhite based on Hope's statement, i.e., he could have constitutionally compelled her to stay in the Store pending any investigation into Hope's shoplifting allegation. It is undisputed that Baerga subsequently heard of Applewhite's traffic warrant after he had already placed her under

---

[8] The Court received an affidavit, (D.E. No. 45-1, Aff. of Weber), and a supplemental certification by Gregory Weber, Chief of the Millburn PD, which had an audio recording attached as an exhibit, (D.E. No. 45-2). Although the Court did not consider any newly-submitted evidence presented by Weber's certification because of Defendants' failure to comply with their discovery obligations, the Court did consider the audio recording because Plaintiff received the audio recording during discovery. (S.J. Tr. 3:22-5:20).

arrest. Therefore, the Court rules that, in light of *Barna* and *Johnson*, Applewhite cannot maintain a claim for unlawful arrest because there is no genuine issue of fact about a warrant being discovered shortly after a proper shoplifting investigation began pursuant to a witness statement.[9] Accordingly, the Court grants Defendants' summary judgment motion as to this claim.

### E. Malicious Prosecution

Defendants argue that Applewhite's malicious prosecution claim must be dismissed as a matter of law because there was probable cause and there has been no showing of malice. (D.E. No. 24-7, Defendants' Brief in Support of Motion for Summary Judgment ("Def. Br.") at 22-23). Defendants also argue that any alleged negligence on the part of the officer inured to Applewhite's benefit in her criminal case because less evidence meant less opportunity for her to be convicted. (S.J. Tr. 39:8-17). In her brief, Applewhite argues that the element of malice can be inferred from a lack of probable cause; however, Applewhite cites no law in this regard. (D.E. No. 51, Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment ("Pl. Br.") at 26). At oral argument, Applewhite argued that gross negligence on the part of a police officer constitutes "malice," but again cited no law to support this argument. (S.J. Tr. 36:8-37:5).

To prove a malicious prosecution claim predicated upon the Fourth Amendment, a plaintiff must show: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a

---

[9] The Court rules that, as a matter of law, there was no fact shown that indicates an overly long durational time period between when Baerga had probable cause based on Hope's accusation and when he discovered the traffic warrant, such that the instant case may be distinguished from *Barna* and *Johnson*.

consequence of a legal proceeding." *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). The failure to prove any of the five elements constitutes a basis to deny a malicious prosecution claim. *Id.*; *see also Wilson v. N.J. State Police,* No. 04–1523, 2006 WL 2358349, at *9 (D.N.J. Aug. 15, 2006).

As to the fourth element, malice is defined as "either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." *Lee v. Mihalich*, 847 F.2d 66, 70 (3d Cir. 1988), *abrogated on other grounds by Albright v. Oliver*, 510 U.S. 266 (1994). The Court finds that Baerga's allegedly grossly negligent police work (i.e., failure to retain evidence, failure to take pictures, failure to check on the prosecutor's progress, etc.) does not constitute "malice" as a matter of law. Moreover, there is no evidence in the record of ill will toward Applewhite by either Hope or Baerga. While Applewhite urges the Court to find that Baerga did not believe in the propriety of the prosecution, (Pl. Br. at 35),[10] there is no specific fact that creates a reasonable inference that Baerga did not believe in the propriety of the prosecution. Thus, Applewhite has shown no specific facts supporting a genuine issue of material fact as to the malice element of her malicious prosecution claim.

Applewhite is unable to sustain her malicious prosecution claim because she does not establish all five elements. Accordingly, the Court grants Defendants' summary judgment motion as to this claim.

---

[10] "[P]laintiff . . . was victimized by the series of egregious conduct by defendants' by [sic] claiming (for whatever reason) that plaintiff [sic] had committed a crime when in fact no crime took place." (Pl. Br. at 35). Applewhite does not offer an allegation to explain why Baerga and Hope would act as they did without a belief that a crime had occurred. While the Court must consider all facts and their reasonable inferences in the light most favorable to Applewhite, it would be unreasonable to infer that Baerga did not believe in the propriety of the prosecution given the facts presented.

### F.     Due Process

#### i.     Substantive Due Process

Applewhite waived her substantive due process allegations at oral argument.  (*See* S.J. Tr. 40:9-15).  Thus, the Court grants Defendants' summary judgment motion as to this claim.

#### ii.     Procedural Due Process

Applewhite withdrew her procedural due process allegations at oral argument.  (*See* S.J. Tr. 43:5-23).  Thus, the Court grants Defendants' summary judgment motion as to this claim.

### G.  Liability under § 1983 – Qualified Immunity and Respondeat Superior

#### i.     Qualified Immunity from § 1983

The Court must determine if qualified immunity shields the individual officer Defendants from liability under § 1983.  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  "In considering claims of qualified immunity, courts are sensitive to the broad range of reasonable professional judgment accorded law enforcement officials in the § 1983 context."  *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000) (internal quotations and citations omitted).  The Third Circuit qualified immunity inquiry is a two-part test: (1) "Did [the officer's] conduct violate clearly established law? [(2)] If so, did he nevertheless reasonably believe that his conduct was lawful in light of the information he possessed at the time?"  *Id.*

As discussed extensively, *see* discussion *supra.* Sections III(D)-(E), the individual officers did not violate any of Applewhite's rights.  In addition, the Court finds that there is no genuine issue of material fact as to whether Baerga had a reasonable belief that there was

probable cause to arrest Applewhite in light of Hope's statement and the traffic warrant.[11]  Thus, Baerga and Barber are entitled to qualified immunity.

### ii.     Qualified Immunity from the NJCRA

"[T]he defense of qualified immunity is appropriate to claims arising under the NJCRA, based on the history of the NJCRA and the Court's prior decisions applying the defense as an extension of a Section 1983 analysis." *Williams v. N.J. Div. of State Police*, No. 10-3478, 2012 WL 1900602, at *15 (D.N.J. May 24, 2012).  As discussed, *see supra.* Section III(G)(i), the individual officers (Baerga and Barber) are accorded qualified immunity in this case.  Thus, the individual officers are also entitled to qualified immunity against Applewhite's NJCRA claims.

### iii.    Respondeat Superior - Barber

Defendants argue that Applewhite has made no allegations of Chief Barber's personal involvement. (Def. Br. at 13).  Applewhite does not address the respondeat superior argument in her Opposition Brief.  The only reference to Barber is in regards to Applewhite's contention that Baerga failed to follow police evidence protocol. (Pl. Br. at 19).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n.3 (1981)).  Applewhite does not attempt to demonstrate Barber's personal involvement in the alleged wrongs.  Applewhite's claims against Barber are thus precluded.  The Court grants summary judgment to Barber on this ground.

---

[11] The Court notes that, in her brief, Applewhite quoted Chief Barber as saying in his deposition that "no reasonable [sic] competent officer would have [acted in the manner that Officer Baerga did]," (Pl. Br. at 19), then also presented this as a direct quote at oral argument, (S.J. Tr. 50:24-51:6).  However, the Court has reviewed the deposition transcript and notes that the alleged statement is not present in the transcript. (*See* D.E. No. 53-2, Barber Deposition).

### iv. Respondeat Superior - Millburn

Count IV of the Complaint asserts a § 1983 claim against Millburn. Defendants argue that Applewhite has produced no evidence tending to prove any Millburn policy or custom of deliberate indifference. (Def. Br. at 14). Applewhite does not directly respond to this argument in her opposition brief. Nevertheless, construing Applewhite's pleadings liberally, Applewhite seems to argue that the Millburn PD failed to adequately train Baerga to collect evidence in shoplifting arrests. (Pl. Br. at 36). The Court held oral argument on this motion, in part, to allow Plaintiff to clarify arguments made in her written brief. However, at oral argument, Applewhite seemed to have changed her argument to contend that a deviation from the Store's general policy can constitute deliberate indifference. (S.J. Tr. 53:24-56:25).

"A local government may be sued under § 1983 only for acts implementing an official policy, practice, or custom." *Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 910 (3d Cir. 1984) (citing *Monell v. Dep't. of Soc. Servs.,* 436 U.S. 658, 690-91 (1978). "A supervising authority may be liable under § 1983 for failing to train police officers when the failure to train demonstrates deliberate indifference to the constitutional rights of those with whom the officers may come into contact." *Gilles v. Davis*, 427 F.3d 197, 207 n.7 (3d Cir. 2005) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

To establish liability on a failure to train claim under § 1983, a plaintiff "must identify a failure to provide specific training that has a causal nexus with [his] injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). Furthermore, a plaintiff must "present scienter-like evidence of indifference on the part of a particular policymaker or policymakers."

*Simmons v. City of Phila.*, 947 F.2d 1042, 1060-61 (3d Cir. 1991). Applewhite does not demonstrate specific facts that raise a genuine issue of a material fact suggesting "scienter-like evidence of indifference" on the part of anyone from Millburn or the Millburn PD toward potential victims of unlawful arrests for shoplifting. Accordingly, the Court grants Defendants' summary judgment motion as to this point.

### H. Claims under § 1981, § 1985, and § 1986

#### i. § 1981

Defendants argue that Applewhite has made no showing of a specific fact that supports a finding that Defendants intended to discriminate on the basis of race. (Def. Br. at 17). At most, Applewhite indicated that she feels generalized discrimination when she is shopping, (D.E. No. 53-3, Leeds Cert., Ex. C, Dep. of Hazelann N. Applewhite 98:21-103:8, July 30, 2012), but not at the Store, (*id.* at 103:15-25).

42 U.S.C. § 1981 provides that all persons within the United States "shall have the same right to . . . make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings." In order to state a claim under § 1981, a plaintiff "must allege facts in support of the following elements: (1) [the plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts." *Brown v. Phillip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001) (internal quotations and citations omitted); *see also Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1118 (10th Cir. 2001) ("We cannot extend § 1981 beyond the contours of a contract . . . [to find liability under § 1981,] there must have been interference with a contract beyond the mere expectation of being treated without discrimination while shopping.").

16

Applewhite has not raised a genuine issue of material fact as to the second prong of *Brown*, whether any Defendant intended to discriminate against her because of race. Accordingly, the Court grants Defendants' summary judgment motion as to this claim.

### ii. § 1985 and § 1986

Applewhite withdrew her § 1985, (S.J. Tr. 62: 5-16), and § 1986, (S.J. Tr. 62: 17-20), claims. Accordingly, the Court grants Defendants' summary judgment motion as to these claims.

## IV. CONCLUSION

The Court GRANTS Defendants' motion for summary judgment. An appropriate order shall accompany this opinion.

/s/ Esther Salas
United States District Judge